## SOUTHERN UNDERWRITERS v. GREEN.
### No. 8853.

Court of Civil Appeals of Texas. Austin.

Oct. 4, 1939.

Rehearing Denied Nov. 1, 1939.

Battaile & Burr, of Houston, for plaintiff in error.

F. H. Hammond, of Burnet, and Felts, Wheeler & Wheeler, of Austin, for defendant in error.

BAUGH, Justice.

This is a Workmen's Compensation case. Southern Underwriters was the insurer, Vincenzo Petrick the employer, and Green the employee. There is no controversy as to the facts; no complaint as to the amount of the Industrial Accident Board's award; nor that the injuries to the employee occurred in the course of his employment. We copy from plaintiff in error's brief its statement of the only issue presented on this appeal: "The only question before the trial court, and the only question presented here, is: Did the policy of plaintiff in error cover the operations of the Petrick Granite Company in the course of which the defendant in error was injured? If it did the judgment of the trial court should be affirmed; if it did not, the judgment should be reversed."

While the policy in question covered other operations, not pertinent here, the coverage here in question as stated in the policy was:

"Classification of Operations

"Grading and Clearing of Land—no street, road, levee, dyke, or railroad construction or maintenance; no cellar or canal excavation—including Drivers, Chauffeurs and their Helpers......

"Estimated Total Annual Remuneration ................. $10,000.00
"Rate Per $100 of Remuneration ....................... 2.70
"Estimated Annual Deposit .270.70"

The contract under which Petrick was doing the work for Victoria Gravel Company was stated in a letter of confirmation to Petrick as follows:

"Confirming our agreement of yesterday reference to your doing grading, complete, for the laying of ties and rails at our new rock plant on the Brownlee Ranch at Sudduth, Texas.

"As I understood the agreement, you were to do all of the work as shown on the plans furnished us by the engineers of the Southern Pacific Railroad, which requires the moving of some 7000 yards of rock and dirt, plus excavation for our primary crusher."

The remaining portion of the contract does not affect the issue presented.

While engaged in doing this work—that is, in making cuts and fills—rocks extending beneath and protruding above the surface of the ground were encountered, and had to be removed in properly grading the land for the laying of the ties and rails. To do so required the use of explosives. Green was acting as "powder man" on the occasion of his injury. In blasting a large rock, a fragment of it struck a pile of lumber and ricocheted, striking and breaking Green's leg.

Petrick had nothing to do with laying ties and rails. His undertaking was to clear the land, make the cuts and fills where needed and prepare the road bed for the track laying that was to follow. The latter work was done by others.

It is the contention of plaintiff in error that as a matter of law under the undisputed facts Green, when injured, was engaged in "railroad construction" work; that this was not covered by the policy; that this character of risk carried a higher premium rate than Petrick had paid; and was expressly excluded from coverage in the policy itself.

The trial court, at the request of plaintiff in error, filed findings of fact and conclusions of law. in which he found as a fact that Green was at the time engaged in "clearing and grading land"; that he was not engaged in "railroad construction"; and that "actual construction of the railroad spur had not begun at the time the said C. A. Green was injured * * *."

The general "classification of operations" covered by said policy was "Grading and Clearing of land * * * including Drivers, Chauffeurs and their Helpers." But for the "no" restriction or clause in said classification, there could be no doubt but that injuries received by an employee engaged in such grading and clearing would be compensable, regardless of the purposes for which the grading and clearing was being done. The work being done by Green at the time undoubtedly came within such general classification. Whether or not the employee under the

undisputed facts came within the terms of the policy depends upon whether the "—no railroad construction * * *—" limiting clause should be construed as exempting the insurer from liability for injuries to employees received while grading and clearing lands for the purposes of, or as a part of, railroad construction; or whether said clause should be treated, not as a limitation of insurer's liability for such injuries, but merely as a separate classification under the general occupation covered by the policy for the purposes of determining the premium rate to be paid by the insured to the insurer.

■ Grading and clearing of land for any other purpose than for street, road, levee, dyke, or railroad construction; or for cellar or canal excavation was manifestly covered by the policy under the prescribed rate of $2.70, a much lower rate than prescribed for coverage of more hazardous employment. Did the collection by the insurer of a minimum rate for its policy, exempt it from liability for injuries coming within the general occupational classification, but in a character of employment within the general classification which requires a higher premium rate for that purpose? We have reached the conclusion that it does not. That is, the general classification, in the instant case grading and clearing of land, determines the insurer's liability; and the named employments following the "no" clause in the policy, as we construe it, were inserted for purposes of fixing premium rates for those particular risks different from the rate for other types of employment within the general classification.

Such a purpose was, we think, clearly contemplated and indicated by the terms of the policy itself. Among other things the policy provided: "This policy is issued by the Company and is accepted by this Employer with the agreement that the classifications and rates of premium are approved by and are subject to modification by the Board of Insurance Commissioners of the State of Texas in accordance with the manual and rating plans established by the Board of Insurance Commissioners, such approval being in accordance with the authority imposed in the Board of Insurance Commissioners by law."

Under this provision, or under the Workmen's Compensation Law, Vernon's Ann. Civ.St. art. 8306 et seq., even without such provisions, the Board of Insurance Commissioners were authorized to make modifications in premium rates so as to make same adequate for the risk involved, even after the policy was issued, and though a definite premium rate were prescribed in such policy. Such a modification by the Board would be binding on both parties and would not invalidate the policy nor limit the coverage prescribed in such policy.

That a subscriber might engage in operations not expressly described in the policy declarations, and still be covered by insurance, is, we think, not only contemplated but expressly provided for by the policy itself in the following language: "If this Subscriber undertakes any operations not described in the Declarations, he shall make proper deposit or deposits thereon at such time as the Attorney may elect based on the Manual of Rates in use by this Carrier at the time when such operations commenced, and shall report the entire remuneration earned by employees engaged in such operations in the same manner as provided in the Declarations for operations already described therein. At the end of the Contract Period the actual amount of remuneration earned by employees during such Period shall be exhibited to the Carrier, as provided in Condition 'C' hereof, and the earned deposit or deposits adjusted in accordance therewith at the rates and under the conditions herein specified. If the earned deposit or deposits thus computed are greater than the initial or original deposit or deposits, this Subscriber shall immediately deposit the additional amount with the Carrier; if less, the Carrier shall return to the Subscriber the unearned portion, but in any event, shall collect the amount as designated as the minimum deposit stated in the Declarations."

■ We interpret these provisions to mean that if a subscriber, while his policy is in force, engages in some operation within the general classification stated in the policy, but not specifically described therein, wherein a greater premium rate is required to cover such risk than that stated in the policy, the insurer is not relieved of liability because of such operations, but can and should charge an added premium commensurate with the additional risk involved in such operation; and the subscriber obligates himself to pay it. Such, we think, is the situation here presented. The insurer cannot escape liability under

its policy for injuries occurring within the general classification covered by the policy merely because they occurred in a particular type of work within that classification in which the minimum premium paid was not adequate to cover that particular risk. Its right and remedy under its policy was to collect from the subscriber an additional rate adequate to cover the risk.

The rule announced by the Supreme Court in Barron v. Standard Accident Ins. Co., 122 Tex. 179, 53 S.W.2d 769; Barta v. Texas Reciprocal Ins. Ass'n, Tex.Civ. App., 67 S.W.2d 433; and Buice v. Service Mut. Ins. Co., Tex.Civ.App., 90 S.W. 2d 342, to the effect that where an employer conducts two or more separate and distinct businesses, involving different risks, he may insure one and not the other, and his insurance will apply only to the one insured, is not here applicable. The business insured in the instant case was "grading and clearing of land." The purposes for which such lands were cleared and graded was but incidental to and subordinate to and a part of the business or operation protected, and, as above stated, were matters going only to the premium rate to be collected; and not decisive of the insurer's liability under its policy.

It follows therefore that the judgment of the trial court should be affirmed.

Affirmed.